Calendar is number 18414, Cortes v. Twenty-First Century, Fox, America. Good morning, Your Honor. May it please the Court, my name is Jay Sanchez for the plaintiff appellant, Francisco Cortes. Mr. Sanchez, could you pull the microphone a little closer to you? Sure, is that better? That's much better. Oh, okay, yeah. And I have just an initial question. Sure. We've met before. Yes. I believe in the past sometimes you've used the name Sanchez-Dorta and sometimes just Sanchez, which do you prefer? Sanchez-Dorta. Sanchez-Dorta. Yes, yes. Okay, thank you. Thank you. As I was going through these papers last night, I came across page 28 of the appellee's papers and quite frankly I was a bit confused and I was hoping the Court could explain to me where I went wrong. It says here that although the plaintiff does not contest the district court's decision, he now suggests an alternative legal theory not presented to the district court that defendants induced Holder to breach the Holder Settlement Agreement. My understanding from my complaint is that that was what I was trying to get across from the very beginning. Sanchez-Dorta, you brought a number of different causes of actions and it looked, from my reading of your brief, as if you were pursuing an appeal. You were acknowledging that the district court was to correct, dismiss most of them and the one that you were pursuing was sounded in fraud or fraudulent inducement. Fraud. Fraud. Is that correct? Yes. However, an additional argument was the one dealing with the intentional, well, the... You can't make new arguments and bring new causes of action at the appeal stage. You're limited to what was before the district court. And so we are focusing, I think, on the fraud or fraudulent inducement claim that you developed or addressed in your brief. So maybe you could focus on that right now. It was also a little unclear to me exactly what you were aiming at and what your argument was. Okay. Well, my argument is that from the very beginning, this was a planned fraud where they were going to... The goal here was to scapegoat my client into signing... The district court dismissed that saying you had not made particular enough allegations to satisfy the federal rules, that you hadn't pointed to particular misrepresentations or at made at particular times in order to satisfy the rule. Could you point us now to allegations in the complaint where you made... Identified false allegations or false statements made by the defendant? That's the issue. I mean, it's not... And as my papers explained, everything was... It was very carefully planned as to avoid appearing... To avoid crossing the line where the law says this is fraud, where the law is very... Is a little bit... Quite frankly, the law on fraud, as it seems to exist, with the exception of cases I've referenced in my papers, where they look at the big picture, and that's what I'm trying to say, to look at the larger picture, if you've got a situation where some of the best lawyers in the world are going to commit a fraud, they're going to know what to say, what not to say, and that's my argument. We were... Could you point us to a particular misrepresentation made by defendants and alleged in your complaint? The thing is, the misrepresentations, I would say... The... By even approaching Mr. Cortez and asking him to enter into some disagreement, I mean, they're... They pursued him to enter into this agreement. The agreement... I mean, the idea... The agreement was, we all signed the agreement, and no one says anything, and that's not what happened. Immediately after they signed the agreement, about two, three weeks later, it comes out in the New York Times, and my client is the one person in the New York Times that's mentioned, and these are the two individuals who are also part of this agreement, the unknown persons whose names are redacted, are not mentioned, and we're wondering why. It's the entire process. It's not... It's... Sir, are you saying that at the time that Ms. Holder spoke with the reporter, this was all part of the plan? Not necessarily. Not when he... When she spoke to the reporter. No, no. I'm saying... It is the reporter who disclosed your client's name, is that not correct? In conjunction with... I mean, I was... I was there. I mean, what happened is that these... The lawyers reach out to my client. My client reached out to me. We go meet with Paul Weiss, and they say, well, we're... if he can assist them in their investigation regarding Mrs. Holder's allegations, and we decide probably it's better not to because of the fact that he already signed an agreement saying you're not supposed to... You've signed an agreement in the past saying not to disparage, so we didn't want to cross that line, and so we said no, and so there was kind of a threat initially to say, well, you know, they said you did sign this agreement, you know, and although the agreement didn't say anything about him helping them out in any case against Mrs. Holder, but there was a threat as far as... I'm sitting there, and I felt it was a threat to, you know, withhold the payments, and so we just... But when I mentioned... I bring that up, and I mentioned the same thing. I bring that up, and I said, was this... Are you saying you're going to stop the payments? And he said, no, no, no. That's not what I said at all, and so we leave, and then we get a call. They pursue my client, say, hey, listen, you know, we need you. We want you... You know, we've been negotiating with these fellows. We want to sign, you know, some sort of agreement, and so I, you know, look at the agreement, and it's, you know, there's a lot of redaction there, and I tell my client we probably shouldn't sign something like this, but at this point, he's being pursued. That's right there. That's the fraud. I mean, it's a fraud in the act of pursuing someone saying, hey, you're going to sign this agreement. You know, we signed this agreement, and, you know, everyone goes their own way, and that was the... I can't... To be honest, I can't tell you the exact same... The exact words that someone has said that were told to me, and that's why I don't put that in the paper, but I know when someone's coming to me saying, you know, reaching out to me about signing this, you know, this contract, you know, the understanding is that we're going to sign this contract. There's no one who will disparage anyone afterwards, and so based upon that, my, you know, my client signs this contract. Sure. But he wasn't disparaged afterwards by any of the signatories to that agreement. At most, a reporter who had had conversations with someone prior to the signing of these agreements disclosed the information that she had received from Ms. Holder. I appreciate your point, sir, and I'm sure the Paul Weiss firm appreciates being thought of as these fantastic attorneys, which, of course, they are, but the issue is the allegation of fraud is so serious and can have so many dramatic impacts and bad consequences that there has to be some specificity, so I don't actually know what the fraud is, and that was the problem that I was having. I understand, and, you know, I mean... I present this to the court. I bring this to the court. I explained, you know, what happened. I explained that my view is that, you know, the definition of fraud is really too... is not equipped to deal with the realities of the 21st century, and just the fact... How would you redefine fraud? How would you like us... Well, let me back up. What would you like us to do? Well, I guess, you know, I would say fraud is a lot like... I don't remember the name of the person who came out with this case, but he said it's like pornography. You know it when you see it, and so that's what I would say. Fraud is something, you know, you know it when you see it, and it's something that, you know... I mean, if I went to the press and said what happened, and, you know, people, the average person would read, wow, it's like they definitely played this guy. This is definitely fraud. I don't do that. I'm not an Avenatti who's going to go into the press. I am coming to the court, and it's up to the court to decide. You know, I just present this. It's not my... Yeah. I think we have your argument, then. You have three minutes to rebuttal, and we'll hear from Ms. Goldstein. Good morning, Your Honors. May it please the Court, Linda Goldstein for the Appellees. Mr. Cortez's entire lawsuit is based on an allegedly defamatory article that was published in the New York Times. The Times article described allegations made by Tamara Holder, a former Fox News contributor, about a sexual assault that she alleged took place by Mr. Cortez in Mr. Cortez's office. Mr. Cortez has not sued the New York Times or Ms. Holder for defamation. Instead, he has sued the Appellees, 21st Century Fox and 21st Century Fox America, on legal theories that the district court correctly held defy comprehension. I'll address only the fraud claim, because that's the only one that has been properly preserved on appeal. The issue I would like to focus on first is not the lack of an actionable misrepresentation that complies with Rule 9b, but the alternative ground for Judge Sweet's ruling, which is the lack of any detrimental reliance. At the time that Mr. Cortez was approached by the Paul Weiss law firm and asked if he would sign the Holder Settlement Agreement, in which he would agree not to disparage Ms. Holder, he had already signed an agreement, his very own severance agreement, in which he had agreed that he would not disparage Fox or its present or former employees. Is that agreement properly before us? Was it referred to in the complaint in any way? Yes, Your Honor. It is referred to the complaint in multiple ways, through the references to the severance payments that Mr. Cortez received and through the reference to the existing contractual obligations of non-disparagement that Mr. Cortez had. Those are specifically in paragraphs 112 and 113 of the complaint I have. So it's not directly, explicitly named, but it's referred to sufficiently for us to treat it as incorporated. Is that your view? Correct, Your Honor. And specifically, the non-disparagement obligation is specifically referenced multiple times in the complaint. So, when the New York Times article appeared after the execution of the Holder Settlement Agreement, Mr. Cortez's hands were no more tied than they would have been if Paul Weiss had never approached him in the first place. He had the same non-disparagement obligation. And so, his ability or inability to speak was no more constrained. So for that reason, there is absolutely no detrimental reliance because the only harm that Mr. Cortez alleges is the harm that resulted from the publication of his name as the alleged sexual assaulter by Tamara Holder. There is no challenge Mr. Cortez's brief does not even address the detrimental reliance issue, which is an independent ground for affirming the district court's dismissal of the fraud claim. With respect to whether there's an actionable misrepresentation, Judge Sweet correctly held that there was no actual misrepresentation stated on the complaint. There are representations attributed to the Paul Weiss attorneys regarding the scope of Ms. Holder's release of Mr. Cortez. Those representations are conceded to be true, so therefore cannot be actionable fraud. If the court has no further questions, we rest on our brief. Thank you. Mr. Sanchez-Dorta, you have— My apologies. The court did ask questions about the tortious interference claim. So if I could just take a second to address that. The tortious interference claim, as stated in the complaint, and as we understood it when we initially briefed it, claimed that the defendants, 21st Century Fox America and 21st Century Fox, interfered with each other's obligations under the Holder Settlement Agreement. What we had believed to be a new argument on appeal was that the defendants had interfered with Holder's obligations under that agreement, and even construed in that way, the complaint does not state a cause of action for tortious interference, precisely because there is no allegation that Ms. Holder disparaged Mr. Cortez after executing the Holder Settlement Agreement. The conversations with Emily Steele, the New York Times reporter, are all conceded to have been before the Holder Settlement Agreement was executed. Moreover, there is an additional defect in the cause of action, which is that nothing that the defendants did is alleged to have induced Ms. Holder to speak to the New York Times. The only action attributed to the defendants is the publication of a joint statement with Ms. Holder. That joint statement did not identify Mr. Cortez by name, by category, by any other attribute, and did not endorse Ms. Holder's allegations or detail them in any way. So with that, Your Honor, we rest on our brief. Thank you very much. Mr. Sanchez-Storti, you have three minutes of rebuttal. Okay. Firstly, I wanted to point out that I disagree with the defendant's position that the earlier contract is incorporated by reference into this complaint. And the reason being is that I'm concerned that subsequently the defendant will sue my client to try to recuperate the severance payments, and I'm going to be involved in more litigation. So that's my concern. Do you disagree with her? It's referenced, but I don't believe that it's – I don't think it's – If the substance of it is referenced in numerous places, including the payment and other obligations, as pre-existing terms, why would it not be incorporated by reference? At this point, I'm just not – I'm not really equipped to answer the question, but I'm just – I just kind of see what might be occurring down the line. But another thing is I wanted to mention the – this – by him signing this contract with Holder, it was totally different than the other contract. In terms of the other contract, you know, that would have been mentioned in the New York Times that Francisco Cortez was – you know, left, you know, his company and he signed some sort of contract, but it had nothing to do with Holder. This is a contract where he signed with Holder, so it's something that the New York Times could use, and the people in – you know, common – losing common sense, people of the world will say, well, you know, he signed this with Holder, so he probably did what is – you know, what they're talking about. And so that's what we believe that, you know, damages, you know, detrimental reliance results from. I'm finishing, Your Honor. Thank you. All right. Thank you. Thank you very much.